COOLEY LLP
William V. O'Connor (216650)
(woconnor@cooley.com)
Alexander R. Miller (294474)
(amiller@cooley.com)
4401 Eastgate Mall
San Diego, CA 92121
Telephone: (858) 550-6000
Facsimile: (858) 550-6420

Gregory Hoffnagle (*pro hac vice*)
55 Hudson Yards
New York, NY 10001
Telephone: (212) 479-6648
Facsimile: (212) 479-6275

Dane R. Voris (281051)
(dvoris@cooley.com)
500 Boylston Street
Boston, MA 02116
Telephone: (617) 937-2300
Facsimile: (617) 937-2400

Attorneys for Plaintiff and Counterclaim-
Defendant AMERICAN CLAIMS
MANAGEMENT, INC.

BROWN & BROWN, INC.
Mark E. King (*pro hac vice*)
Chief Litigation Counsel
(MEKing@bbins.com)
220 South Ridgewood Avenue
Daytona Beach, FL 32115
Telephone: (386) 239-5782
Facsimile: (386) 239-5729

***Counsel continued on next page***

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| AMERICAN CLAIMS MANAGEMENT, INC., | Case No. 3:18-cv-00925-JLS-MSB |
| Plaintiff and Counterclaim-Defendant, | **AMENDED JOINT DISCOVERY PLAN** |
| v. | Judge: Hon. Michael S. Berg |
| ALLIED WORLD SURPLUS LINES INSURANCE COMPANY (f/k/a Darwin Select Insurance Company), | |
| Defendant and Counterclaimant. | |

1  QUINN EMANUEL URQUHART & SULLIVAN, LLP
   Amar L. Thakur (SBN 194025)
2  (amarthakur@quinnemanuel.com)
3  5095 Rancho Quinta Bend
   San Diego, CA 92130
4  Telephone:  (213) 443-3000
   Facsimile: (213) 443-3100
5
6  Jane M. Byrne (NY 2266443)
   (janebyrne@quinnemanuel.com)
7  Guyon H. Knight (NY 5003108)
   (guyonknight@quinnemanuel.com)
8  Jonathan E. Feder (NY 5409172)
   (jonathanfeder@quinnemanuel.com)
9  51 Madison Ave., 22nd Fl.
   New York, NY 10010
10 Telephone: (212) 849-7000
   Facsimile: (212) 849-7100
11
12 Attorneys for Defendant and Counterclaimant
   ALLIED WORLD SURPLUS LINES INSURANCE COMPANY
13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Pursuant to this Court's June 3, 2019 Order Setting Case Management (ECF No. 63), Plaintiff and Counterclaim-Defendant American Claims Management, Inc. ("ACM") and Defendant and Counterclaimant Allied World Surplus Lines Insurance Company ("Allied World") (collectively, the "Parties," each a "Party") respectfully submit the following Amended Joint Discovery Plan.

## 1.    Jurisdiction and Service

This Court has subject matter jurisdiction over the Parties' claims under 28 U.S.C. § 1332(a)(1) in that there is complete diversity of citizenship between the Parties and the amount in controversy exceeds $75,000.  Neither Party has challenged personal jurisdiction or venue in this action.  No Parties remain to be served.

## 2.    Facts

ACM's statement:

At the heart of this case is a Professional Liability Insurance Policy (the "Primary Policy") issued by an insurer, Allied World, to its insured, ACM.  ACM is a San Diego-based company that provides claims administration services to insurers.  One of ACM's clients, QBE Insurance Group ("QBE"), accused ACM of negligently mishandling an auto-insurance claim in 2011—precisely the type of event that the Primary Policy is designed to cover.  Yet, when ACM notified Allied World and its excess insurers of QBE's potential claim, Allied World only made things worse for ACM.

For one, Allied World selected and appointed an incompetent attorney named Alan Jampol to represent ACM.  Jampol purported to act as counsel for ACM, though it was clear that he acted in the interests of Allied World, who directed and controlled his representation all along.  Further, Jampol concocted an ill-fated assignment scheme—later described as "prima facie fraud" by a California judge—that served only to increase the value QBE's claim against ACM.

Worse, despite numerous opportunities to do so, Allied World refused to settle ACM's exposure within ACM's combined policy limits.  Ultimately, QBE settled with its insured and the injured parties for $15 million, which QBE then sought to recoup

(with additional fees, costs, and interests) from ACM through arbitration proceedings. Prior to the arbitration, Allied World decided to make its remaining policy limits available to settle with QBE, and initially intended to inform ACM of this decision, but ultimately concealed this fact from ACM, failed to engage in settlement negotiations, and instead allowed the arbitration to proceed. In July 2017, an arbitration panel awarded QBE damages of 18,450,855.73 against ACM. Yet, when ACM demanded that Allied World and its excess insurers cover ACM's damages, which far exceeded ACM's combined policy limits, Allied World balked. Then, after months of delay, Allied World forwarded only its remaining policy limits, leaving ACM to foot the bill for the remaining damage that Allied World and its appointed counsel caused. Now Allied World claims the excess insurers are to blame for its failure to inform ACM that Allied World had made its full limits available for settlement, and that this somehow relieves Allied World of its duties to ACM. Approximately $4.9 million of the QBE award remains unfunded and more than $2.6 million in ACM's fees and expenses remained unreimbursed. ACM's damages continue to grow.

Allied World breached its express and implied contractual duties to ACM under the Primary Policy by, among other things, failing to appoint competent counsel, repeatedly failing to settle the claims against ACM, and failing to cover ACM for the total losses resulting from the QBE arbitration. ACM brings this suit in order to be made whole and to hold Allied World responsible for ACM's damages.

Allied World's statement:

ACM purchased a Professional Liability Insurance Policy from Allied World (the "Policy") which provided $5 million of coverage for ACM's business as a third-party claims administrator. (Policy (Dkt. 54-1) ¶ III(R)-(S).) The Policy excludes coverage for, among other things, loss or defense expenses for (i) "liability under any express contract or agreement," (ii) "lack of good faith or fair dealing in the handling of any [insurance claim]," and/or (iii) "dishonest or fraudulent act or omission."

ACM served as the third-party claims administrator for QBE. On February 6,

2011, Galdino Cortes, a QBE insured, was in a collision with an automobile containing the Cardona family.  The Cardonas mailed a demand to ACM that QBE pay out the Cortes Policy to the Cardonas in the full amount of the policy limit.  ACM failed to timely document, respond, or act on the demand and ignored a follow-up call from the Cardonas inquiring on the status of the demand.  After the demand deadline, ACM asked QBE for permission to offer the policy limits to the Cardonas, but falsely represented to QBE at that time that it had not yet received a demand.  QBE granted ACM's request but by that time, the Cardonas asserted that ACM's failure to timely respond resulted in the cap being removed from the Cortes policy with QBE.  ACM's conduct therefore exposed QBE to the risk of extra-contractual liability, as QBE, the Cardonas, and Cortes all alleged.

Allied World later appointed the law firm of Jampol Zimet, LLP to represent ACM.  Despite the fact that Cortes was in prison, Alan Jampol recommended to ACM that QBE obtain an assignment of Cortes's right to sue QBE for extracontractual damages.  After its General Counsel independently researched and investigated Mr. Jampol's suggested course of action, ACM authorized Jampol to proceed.  Cortes' family, however, refused to accept the consideration for the assignment and later challenged the assignment as invalid.

The Cardonas eventually filed a suit in California state court against Cortes, and won a $21 million verdict after a jury trial.  QBE eventually settled with the Cardonas and Cortes paying  $15 million over its $30,000 policy limit in extra-contractual funds, then commenced an arbitration to recover this payment from ACM.  After the arbitration hearing, the panel found ACM 100% liable for QBE's damages, and awarded QBE a total of $18.45 million, which included attorneys' fees and interest. The arbitration panel held that ACM was liable for indemnity for QBE under its claims management contract with QBE because ACM's conduct had exposed QBE to bad faith liability, and ACM had breached its duties under the claims management contract by mishandling the initial demand from the Cardonas and hiding that fact

from QBE and in overseeing the assignment from Cortes. A judgment based on the $18.45 million was entered by a California state court, along with interest that continues to accrue at a rate of 10% per annum.

ACM refused to pay the judgment and instead sought full satisfaction from Allied World and ACM's excess insurers.  To avoid the further accrual of interest and facilitate a settlement of ACM's dispute with QBE, Allied World paid to ACM its full remaining policy limits of $4,390,341 (the limits had been depleted by defense fees) to be applied to the QBE judgment.  Allied World's letter announcing its payment expressly stated that Allied World "makes this payment while expressly reserving all of its rights, including its right to litigate its coverage defenses so as to recover this payment from ACM."  Despite recovering almost $15 million from insurance and other sources, ACM waited until approximately May 15, 2019 to pay the remainder of the judgment to QBE.  As a result of ACM's choice not to pay the judgment, approximately $1.45 million in interest accrued before ACM finally capped its losses by paying QBE.

### 3.    Legal Issues

ACM's statement:

ACM identifies the following legal issues for resolution:

- •    Whether Allied World breached its duty to defend ACM;
- •    Whether Allied World breached its duty to indemnify ACM;
- •    Whether Allied World breached the implied covenant of good faith and fair dealing under the Primary Policy.

Allied World's statement:

ACM's loss and defense expenses due to the Cardona claims were excluded from coverage under the Policy.  Specifically, ACM's claims arise from the indemnity provision of ACM's claims management contract with QBE.  Its claims are therefore excluded from coverage under the Policy exclusion for "liability under any express contract or agreement."  (Policy ¶ IV(A)(7).)  ACM's claims also arose from

allegations of bad faith handling of the Cardona claim and fraudulent deception of QBE, as held in the Arbitration Award.  They are thus excluded under the Policy exclusions for "lack of good faith or fair dealing in the handling of any [insurance claim]," and "dishonest or fraudulent act or omission."  (Policy, Endorsement 9(1); *Id.* ¶ IV(A)(1).)  Allied World therefore maintains that ACM's claims based on the Policy fail to state a claim because Allied World has no obligations to ACM under the Policy due to the applicable Policy exclusions.  *See, e.g.*, *Cornell v. Fed. Ins. Co.,* 2012 WL 1965293, at \*6-\*7 (S.D. Cal. May 30, 2012) (Sammartino, J.) (holding that a policy's contract exclusion barred claims for breach of contract).

Allied World also seeks reimbursement and restitution from ACM for the $5 million it paid ACM in benefits and defense costs under the Policy.  These sums were paid under a reservation of rights and, for the reasons just explained, were for loss and defense expenses not covered by the Policy.

### 4.   Motions

The following motions are currently pending before the Court:

- ACM's objection to this Court's December 31, 2018 discovery order (ECF No. 41), filed on January 14, 2019;

- Allied World's motion for judgment on the pleadings (ECF No. 62), filed on May 28, 2019.

ACM anticipates filing a motion to compel Allied World's production of communications with ACM's excess insurers.  Allied World is wrongfully withholding communications with ACM's excess insurers based on an improper assertion of the common-interest doctrine, which is not supported by the facts of this case.  ACM is also in the process of reviewing Allied World's recently produced privilege log, which may give rise to additional disputes.

Allied World states that ACM has not met and conferred concerning the prospective motion it announces for the first time above, which in any event would be untimely pursuant to Magistrate Judge Berg's Civil Chamber Rule IV.D.  Allied World

AMENDED JOINT DISCOVERY PLAN
3:18-CV-00925-JLS-MSB

has begun to meet and confer concerning numerous deficiencies in ACM's privilege log and recent discovery responses.  If these disputes are unable to be resolved through the meet and confer process, Allied World may file one or more motions to compel.

The Parties also anticipate other customary motion practice, such as summary judgment motions.

### 5.    Amendment of Pleadings

As noted above, Allied World's motion for judgment on the pleadings is currently pending.  Allied World has taken the position that ACM's excess insurers previously instructed Allied World to conceal Allied World's tender of its remaining policy limits from ACM.  Accordingly, ACM reserves the right to seek leave to amend its complaint to add its excess insurers as additional parties once ACM has an opportunity to review Allied World's communications with those excess insurers.

Allied World states that the pleadings are now closed, and thus any amendment must be authorized by the Court pursuant to Fed. R. Civ. P. 15(a)(2).  There is no basis under that Rule to permit ACM a third chance to plead valid claims against Allied World.  In particular, ACM's focus on Allied World's communications with its excess insurers is a red herring given that at around the time of Allied World's tender (which ACM learned of almost a year before filing this suit), ACM was communicating directly with its excess insurers and had independently requested that the excess insurers make their limits available to resolve the dispute.

### 6.    Evidence Preservation

The parties are meeting and conferring about potential document production issues, and will advise the Court of any remaining disputes during the June 24, 2019 Case Management Conference.

### 7.    Rule 26(a)(1) Initial Disclosures

The Parties exchanged initial disclosures under Federal Rule of Civil Procedure 26(a)(1) on September 21, 2018.

**8.    Discovery**

<u>Discovery taken to date:</u>

ACM has propounded the following written discovery in this case:

- First Set of Requests for Production on Allied World (September 27, 2018);
- Subpoena to Produce Documents to Alan Jampol (December 20, 2018);
- First Set of Interrogatories on Allied World (February 13, 2019);
- Subpoena to Produce Documents to Federal Insurance Company (April 30, 2019);
- Subpoena to Produce Documents to Westchester Surplus Lines Insurance Company (April 30, 2019);
- Second Set of Interrogatories on Allied World (June 12, 2019);
- First Set of Requests for Admission on Allied World (June 12, 2019);

Allied World has propounded the following written discovery in this case:

- First Set of Requests for Production on ACM (September 13, 2018);
- First Set of Interrogatories on ACM (September 13, 2018);
- Subpoena to Produce Documents to Mintz Levin (September 20, 2018);
- Subpoena to Produce Documents to QBE Insurance Corporation (October 19, 2018);
- Subpoena to Produce Documents to Westchester Surplus Lines Insurance Company (November 15, 2018);
- Subpoena to Produce Documents to Federal Insurance Company (November 16, 2018);
- Subpoena to Produce Documents to QBE Insurance Corporation (November 20, 2018);
- Second Set of Interrogatories on ACM (December 4, 2018);
- Subpoena to Produce Documents to Alan Jampol (December 14, 2018);
- Subpoena to Produce Documents to QBE Insurance Corporation (May 2,

AMENDED JOINT DISCOVERY PLAN
3:18-CV-00925-JLS-MSB

2019);

- Second Set of Requests for Production on ACM (May 7, 2019);
- Third Set of Interrogatories on ACM (May 7, 2019);
- Document subpoena to Arrowhead General Insurance Agency, Inc. (ACM's immediate corporate parent) (May 8, 2019);
- Document subpoena to Brown & Brown, Inc. (ACM's ultimate corporate parent) (May 8, 2019);
- Third Set of Requests for Production on ACM (June 12, 2019);
- Fourth Set of Interrogatories on ACM (June 12, 2019);
- First Set of Requests for Admission on ACM (June 12, 2019).

ACM has taken or anticipates taking the following depositions in this case:

- Peter Klee (April 23, 2019);
- Kimberly Ashmore (April 26, 2019);
- Brett Arruda (May 6, 2019);
- Alan Jampol (May 16, 2019);
- Carrie Campi (June 6, 2019);
- Kelly Doherty-Schaffner (June 7, 2019);
- ACM 30(b)(6) Designee (June 27, 2019)
- Susan Field (June 28, 2019);
- Allied World 30(b)(6) Designee (TBD);
- Anthony Cannon (expert) (TBD).

In addition, ACM anticipates moving to re-open the depositions of Kimberly Ashmore and Brett Arruda once Allied World produces its wrongfully withheld communications with ACM's excess insurers.  Ms. Ashmore and Mr. Arruda participated in the vast majority of these communications, and ACM is entitled to depose Ms. Ashmore and Mr. Arruda about those communications (and other oral discussions with ACM's excess insurers) once produced.

Allied World has taken or anticipates taking the following depositions in this

AMENDED JOINT DISCOVERY PLAN
3:18-CV-00925-JLS-MSB

case:

- Peter Klee (April 23, 2019);
- Dhara Patel (April 25, 2019);
- Stephen Erigero (May 14, 2019);
- Alan Jampol (May 15, 2019);
- Robert Schraner (June 11, 2019);
- ACM 30(b)(6) Designee (June 27, 2019);
- Robert Bowling (July 3, 2019);
- Mark King (date requested but no response received);
- Spiro Bantis (TBD);
- Charles Henderson (expert) (July 12, 2019).

Allied World further states that ACM has not met and conferred concerning the motion it announces for the first time above, which in any event would be untimely pursuant to Magistrate Judge Berg's Civil Chamber Rule IV.D.  There is no basis for reopening either of these depositions.

Subjects for discovery: The Parties anticipate discovery concerning the issues raised in Sections 2 and 3 above, including, but not limited to, alleged settlement offers and demands made to ACM and Allied World in the underlying disputes, the retention of and control over Jampol, the Parties' respective claim files, Allied World's alleged breaches of the Primary Policy, the applicability of any exclusions under the Primary Policy and exceptions thereto, and all other theories of liability and damages.

Proposed limitations or modifications to discovery rules:

Depositions:  The Parties may each take 10 depositions of witnesses without leave pursuant to Federal Rule of Civil Procedure 30(a)(2).

Interrogatories: Each Party may serve 25 interrogatories on the other Party.

Requests for Admission: Each Party may serve 25 non-authentication requests for admission on the other Party.

Phased discovery: The Parties agree there is no need to phase discovery at

1    this time.

2          <u>Limited Discovery:</u> The Parties agree that limited discovery is not

3    necessary to enable each Party to make a reasonable settlement evaluation.

4          <u>Identified discovery disputes:</u> None at this time.

5    **9.    Class Actions**

6    This is not a class action.

7    **10.   Related Cases**

8          On April 17, 2019, Mark King, Chief Litigation Counsel for Brown & Brown,

9    Inc. and counsel for ACM in this action, filed a motion to quash Allied World's

10   deposition subpoena in the United States District Court for the Middle District of

11   Florida.  Mr. King's motion was denied by the assigned magistrate judge on June 14,

12   2019.  It is anticipated that Mr. King will file an objection to the magistrate judge's

13   order with the Honorable Carlos Mendoza, United States District Judge.

14   **11.   Relief**

15   <u>ACM's requested relief:</u>

16         ACM seeks all compensatory damages pled and proved, including the amounts

17   described in Section 2 above, attorneys' fees and costs, punitive damages, prejudgment

18   interest, and such other relief as to this Court may deem just and proper.

19   <u>Allied World's requested relief:</u>

20         Allied World has requested that this Court: (a) enter judgment in favor of Allied

21   World and against ACM on every count in ACM's complaint; (b) award Allied World

22   damages of $4,390,341 as reimbursement for the amounts Allied World paid to ACM;

23   (c) award Allied World damages of $609,659 as restitution or unjust enrichment for the

24   amounts Allied World paid in defense costs on behalf of ACM; (d) award Allied World

25   pre- and post-judgment interest to the maximum extent allowed by law; (e) award Allied

26   World its costs and reasonable attorneys' fees; and (f) award such other relief as this

27   Court deems just and proper.

28   **12.   Trial**

All Parties have demanded a jury trial in this action.  The Parties request that the Court schedule approximately 8 trial days.

**13.    Protective Order**

The Court issued an Order Granting Joint Motion for Entry of Protective Order (ECF No. 38) on December 18, 2018.

**14.    Claims of Privilege or Protection**

The Court issued an Order Granting Joint Motion for Entry of First Amendment to Order Governing Discovery of Electronically Stored Information (ECF No. 43) on February 6, 2019, which addresses the parties' agreed procedure for producing privilege logs in this action.  As noted above, ACM anticipates filing a motion to compel Allied World's communications with ACM's excess insurers, which are currently being withheld on the basis of attorney-client privilege.

**15.    Scheduling**

ACM does not propose a change to the dates set forth in the amended scheduling order in this case (ECF No. 46).  At this point both parties have completed their document productions, and there is ample time to complete the remaining fact and expert witness depositions that have been noticed or are in the process of being scheduled by the parties before the July 12, 2019 discovery cutoff date.  Accordingly, while it is possible that pending or future disputes may lead to a handful of limited depositions after the cutoff date, ACM believes it is unnecessary and premature to alter the remaining pre-trial dates at this time.

Allied World respectfully requests a three-month extension of the forthcoming deadlines in the Amended Scheduling Order (Dkt. 46).  Unfortunately, ACM's conduct has delayed the completion of discovery in this matter:

- ACM moved to quash a deposition subpoena directed to Mark King, the Brown & Brown employee who fired Alan Jampol and who has been involved in the underlying dispute since before the assignment was obtained from Mr. Cortes.  On June 14, 2019, the Middle District of Florida

denied this motion. (A copy of this decision is attached hereto as Exhibit A.) Allied World has reached out to schedule Mr. King's deposition, but has not received dates. ACM now states that it intends to appeal this decision, which may further delay taking this necessary deposition.

- ACM has taken the position that documents held by Brown & Brown, ACM's ultimate corporate parent, are not in ACM's possession, custody, or control—despite the fact that ACM voluntarily produced documents from Arrowhead (its immediate corporate parent) and despite the fact that Brown & Brown's Mark King has appeared to represent ACM in this very case. Allied World was thus forced to subpoena Brown & Brown documents. Brown & Brown has stated in meet and confers that it has thousands of documents potentially responsive to Allied World's subpoena, but Brown & Brown has not yet produced any documents. Brown & Brown now states that it may not produce any documents until just one week before the deposition of Brown & Brown's Robert Bowling.

Extending the remaining deadlines as Allied World requests would give the parties the opportunity to resolve these issues and any other remaining discovery disputes. An extension would also allow the parties to adequately prepare for the remaining depositions of fact, expert, and Rule 30(b)(6) witnesses. Finally, Allied World has filed a motion for judgment on the pleadings, which has the potential to resolve this dispute in its entirety. Even if granted only in part, this motion could streamline the remaining issues in dispute. Allied World's motion is scheduled to be argued on July 18, 2019. Under the current scheduling order, however, the parties' motions for summary judgment are scheduled to be filed by August 12, 2019. Extending the schedule would give the Court an opportunity to consider and resolve Allied World's motion for judgment on the pleadings, while conserving the parties' resources given the considerable expense that will be necessary to file summary judgment motions.

AMENDED JOINT DISCOVERY PLAN
3:18-CV-00925-JLS-MSB

1         In the alternative, Allied World respectfully requests that the remaining pre-trial

2    dates of paragraphs 3 and 5-10 of the Amended Scheduling Order (Dkt. 46) be amended

3    to run from 30 days after the Court issues an order resolving Allied World's motion for

4    judgment on the pleadings.  Under the current schedule, all pretrial motions are due just

5    25 days after the hearing date set for Allied World's pending motion.

Dated:    June 17, 2019               COOLEY LLP

6

7                                      By:  *s/William V. O'Connor*

8                                           William V. O'Connor (216650)

9                                      Attorneys for Plaintiff and Counterclaim-

10                                     Defendant AMERICAN CLAIMS
                                       MANAGEMENT, INC.

11   Dated:    June 17, 2019            QUINN EMANUEL URQUHART &

12                                       SULLIVAN, LLP

13

14                                     By:  *s/Amar Thakur*

15                                          Amar L. Thakur (194025)

16                                     Attorneys for Defendant and
                                       Counterclaimant ALLIED WORLD
17                                     SURPLUS LINES INSURANCE
                                       COMPANY

18

19

20

21

22

23

24

25

26

27

28

AMENDED JOINT DISCOVERY PLAN
3:18-CV-00925-JLS-MSB

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## SIGNATURE CERTIFICATION

Pursuant to Section 24(f)(4) of the Electronic Case Filing Administrative Policies and Procedures Manual, I hereby certify that the content of this document is acceptable to counsel for Allied World Surplus Lines Inc., and that I have obtained his authorization to affix his electronic signature to this document.

By:   *s/William V. O'Connor*
William V. O'Connor (216650)

AMENDED JOINT DISCOVERY PLAN
3:18-CV-00925-JLS-MSB

# EXHIBIT A

# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

**AMERICAN CLAIMS MANAGEMENT, INC.,**

        **Plaintiff,**

**v.**                                **Case No:  6:19-mc-25-Orl-41GJK**

**ALLIED WORLD SURPLUS LINES INSURANCE COMPANY (fka Darwin Select Insurance Company),**

        **Defendant.**

---

# ORDER

This cause came on for consideration without oral argument on the following motion:

| | |
|---|---|
| **MOTION:** | **MOTION TO QUASH NON-PARTY DEPOSITION SUBPOENA AND/OR MOTION FOR PROTECTIVE ORDER AND INCORPORATED MEMORANDUM OF LAW (Doc. No. 1)** |
| **FILED:** | **April 17, 2019** |

**THEREON** it is **ORDERED** that the motion is **DENIED**.

## I.    BACKGROUND.

On April 12, 2019, Defendant Allied World Surplus Lines Insurance Company ("Allied World") served a subpoena on non-party Mark E. King ("King") which commands King's deposition in an action pending in the United States District Court for the Southern District of

California.[1]   Doc. No. 3-1.   The underlying case between Plaintiff American Claims
Management, Inc. ("ACM") and Allied World is a breach of contract and bad faith claim related
to an excess insurance policy issued by Allied World to ACM.   Doc. No. 3-2.   ACM alleges that
Allied World acted in bad faith and failed to provide ACM with a proper defense in an underlying
dispute with another insurer, QBE, and to honor its duty to fully indemnify ACM and to settle.[2]
Doc. No. 3-2 at 3.   ACM alleges Allied World mishandled the claim at various stages and failed
to settle leading to a substantial arbitration award against ACM in favor of QBE. Doc. No. 3-2 at
3.   Allied World filed a counterclaim against ACM for reimbursement and unjust enrichment for
Allied World's payment to QBE.   Doc. No. 3-3.

On April 17, 2019, King filed a Motion to Quash Non-Party Deposition Subpoena and/or
Motion for Protective Order and Incorporated Memorandum of Law (the "Motion").   Doc. No. 1.
The Declarations of King and William V. O'Connor, Esq., counsel for ACM, were attached as
exhibits.   Doc. Nos. 2 and 3.   On April 18, 2019, the Court issued an order staying enforcement
of the subpoena pending resolution of the Motion.   Doc. No. 6.   King requested oral argument.
Doc. No. 7.   On May 1, 2019, Allied World filed an Opposition to Mark E. King's Motion to
Quash and Incorporated Memorandum of Law (the "Response").[3]   Doc. No. 12.   On May 31,

---

[1] *American Claims Management, Inc. v. Allied World Surplus Lines Insurance Company*, Case No. 18-cv-925-JLS-MDD.
[2] A brief synopsis of the underlying facts is instructive:

ACM is a third-party claims handler for QBE.   QBE's insured, Cortes, was involved in a motor vehicle accident
with the Cardonas family.   The Cardonas were injured and Cortes, who was driving under the influence, was at
fault.   ACM received a claim from the Cardonas for Cortes's policy limits of $30,000 but failed to timely respond
to the claim.   The Cardonas ultimately received a $22 million jury verdict against Cortes.   QBE settled with the
Cardonas and the Cortes families for $15 million and pursued ACM in arbitration.   An arbitration panel awarded
QBE $18 million against ACM.   Allied World appointed the law firm of Jampol Zimet to assist ACM during the
pendency of the Cardonas action (although ACM was not a party to the action, nor was QBE) based on potential
claims by QBE for the Cardonas matter, under a reservation of rights.   Allied World also paid out its policy limits
of approximately $5 million under a reservation of rights after the arbitration award was issued. ACM seeks the
balance of the arbitration award from Allied World as well as attorney's fees and costs.   Doc. Nos. 3-2, 3-3.
[3] An unredacted copy of the Response was filed under seal along with a copy of the deposition of Peter Klee

2019, King filed a Reply in Support of Mark E. King's Motion to Quash Non-Party Deposition Subpoena and/or Motion for Protective Order (the "Reply").  Doc. No. 21.  On May 31, 2019, King also filed the Supplemental Declaration of William V. O'Connor.  Doc. No. 22.  On June 4, 2019, Allied World filed a Joinder in Request for Oral Argument seeking to join King's request for oral argument in this matter.  Doc. No. 24.

King is the Chief Litigation Officer for Brown & Brown, an insurance brokerage that is ACM's parent company.  Doc. Nos. 1 at 2-3; 2 at 1-2.  King argues that although he was copied on email correspondence during the underlying litigation involving the Cardonas, QBE, and ACM, he played no day-to-day role.[4]  Doc. No. 1 at 3; 2 at 3.  King argues that he has "virtually no non-privileged information to provide at deposition" with respect to the earlier litigation.  Doc. No. 1 at 4.  However, since the arbitration award to QBE, King has taken an active role in providing legal advice to ACM in its lawsuit against Allied World, including overseeing the litigation strategy of ACM's outside counsel of record.  Doc. No. 1 at 3.

King argues that Allied World cannot demonstrate that no other means exist for obtaining the information Allied World seeks from King, and that none of the information sought is relevant, non-privileged, or crucial to the preparation of Allied World's case.  Doc. No. 1 at 4.  King argues that Allied World's subpoena is merely a litigation tactic calculated to harass a high-ranking executive and lawyer of ACM's parent company and distract ACM's preparations for its upcoming expert witness reports and percipient witness depositions.  Doc. No. 1 at 5.

---

pursuant to this Court's order granting in part Allied World's motion to seal.  Doc. Nos. 13, 16, 17, 18, and 19.
[4]  King states in his Declaration that:  "In my role as Chief Litigation Counsel, I was copied on some correspondence relating to the ACM-QBE dispute occurring after the acquisition of ACM by Brown & Brown. However, I played no day-to-day role in the litigation between ACM and QBE.

In its Response, Allied World argues that King is a percipient witness who can give relevant, nonprivileged testimony about the facts underlying the dispute between ACM and Allied World. Doc. No. 18 at 1. Allied World notes that King did not appear in the case currently pending in the District Court in Southern California until after he filed the instant Motion. Doc. No. 18 at 3. Allied argues that King's appearance in the action pending in California is nothing more than a pretext to avoid deposition. Doc. No. 18 at 3.

Allied World argues that ACM's claim is that Allied World's appointed counsel, Alan Jampol, was furthering only Allied World's interests and that he provided incompetent counsel to ACM, including failing to settle in a timely fashion. Doc. No. 18 at 3. Allied World argues that King was far more involved in the underlying litigation that he admits, specifically that he was involved in discussions with Jampol, he had independent contacts with QBE regarding the matter, and that King directed Jampol to stop acting as counsel to ACM. Doc. No. 18 at 3, 6.

## II. ANALYSIS.

"The scope of discovery under a Rule 45 subpoena is the same as the scope of discovery under Rule 26." *Woods v. On Baldwin Pond, LLC*, No. 6:13-CV-726-ORL-19DAB, 2014 WL 12625078, at *1 (M.D. Fla. Apr. 2, 2014). Rule 26(b)(1) provides the following:

> Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.

Under Rule 26(c)(1), a party moving for a protective order must show that good cause exists for the court to issue such an order "protect[ing] a party or person from annoyance,

embarrassment, oppression, or undue burden or expense."[5]  In addition to finding good cause, the court must also be satisfied that, on balance, the interests of the party seeking the protective order outweigh the interests of the opposing party. *McCarthy v. Barnett Bank of Polk Cty.*, 876 F.2d 89, 91 (11th Cir. 1989). The moving party bears the burden of establishing entitlement to a protective order. *Ekokotu v. Fed. Exp. Corp.*, 408 F. App'x 331, 336 (11th Cir. 2011).[6]  Although the bases for granting a protective order are narrow, the Court may, on its own, limit the extent of discovery "if it determines that . . . the proposed discovery is outside the scope permitted by Rule 26(b)(1)." Fed. R. Civ. P. 26(b)(2)(C)(iii).

Emails and deposition excerpts produced by both parties reflect that King was involved in some capacity in the underlying dispute between ACM and QBE.   Allied World seeks to depose King related to his involvement in that underlying dispute with respect to events "where he has firsthand knowledge of underlying facts – beginning with his taking over the case from Schraner on April 1, 2015, through his firing of Jampol in June 2015, and ending with the arbitration in April 2017."  Doc. No. 18 at 16-17.  Events that all pre-date the current litigation.  The Court finds that Allied World has demonstrated that King was involved in the underlying dispute, litigation, and arbitration and that he is likely to have factual knowledge that is discoverable. Thus, Allied World has demonstrated a legitimate purpose in seeking to depose King.

The privilege King seeks to assert is far more narrow and precise than the net cast by King in response to the subpoena.   Raising the specter of potential privilege is insufficient to preclude

---

[5] Under Rule 45(d)(3), the bases for quashing or modifying a subpoena that are applicable here are more limited than those for granting a protective order under Rule 26(c)(1), specifying that the court must grant the motion to quash or modify a subpoena if the subpoena "requires disclosure of privileged or other protected matter, if no exception or waiver applies; or subjects a person to undue burden."

[6] In this circuit, "[u]npublished opinions are not considered binding precedent, but they may be cited as persuasive authority." 11th Cir. R. 36-2.

any inquiry where relevant factual information may be available. Facts are not protected by the attorney-client privilege. *Slep-Tone Entm't Corp. v. Johnson*, 518 F. App'x , 821 (11th Cir. 2013) (Attorney client privilege "protects only disclosure of communications; it does not protect disclosure of underlying facts by those who communicated with the attorney.") (Citations omitted). Further, while it may be true that the inquiry during deposition could stray into matters that are privileged, those issues are more appropriately addressed when they come up on a case-by-case basis. *Fox v. Pitney Bowes, Inc.*, No. 1:09-cv-1028, 2009 U.S. Dist. LEXIS 140134, at *8-9 (N.D. Ga. Sept. 18, 2009). If King has a basis for objecting to a specific question posed at his deposition, he can assert the appropriate privilege at that time. *Id.* at *8-10 (denying motion for blanket protective order for current counsel where counsel were material witnesses regarding the facts of the underlying settlement).

Blanket protective orders prohibiting a deposition are rarely granted absent extraordinary circumstances, even where the deposition is of a party's attorney. *Id.* at *5 (citing *Salter v. Upjohn Co.*, 593 F.2d 649, 651 (5th Cir. 1979)); *Axiom Worldwide, Inc. v. HTRD Group H.K., Ltd.*, No. 8:11-cv-1468, 2013 U.S. Dist. LEXIS 8475, at *7-8 (M.D. Fla. Jan. 22, 2013). King's involvement in the current pending action, and his appearance in that action, is insufficient in and of itself to prohibit his deposition as a percipient witness to the events that transpired prior to this litigation in the underlying dispute that serves as a basis for ACM's bad faith claim and Allied World's counterclaim. *Travelers Indem. Co. of Conn. v. Richard McKenzie & Sons, Inc.*, 8:17-cv-2106, 2018 U.S. Dist. LEXIS 118625, at *18 (M.D. Fla. Mar. 14, 2018) (courts have recognized a party's right to depose an opposing party's trial counsel where that attorney has also participated in events that underlie the action). In short, King has failed to satisfy his burden that he is entitled to a protective order.

Allied World has requested attorney's fees for filing a Response to the Motion.   Federal Rule of Civil Procedure 37(a)(5) governs attorney's fees for motions for protective order.   *See Renuen Corp. v. Lameira*, No. 6:14-cv-1754, 2015 U.S. Dist. LEXIS 52814, at *6 (M.D. Fla. Apr. 22, 2015).   If a motion is denied, "the court . . . must, after giving an opportunity to be heard, require the movant, the attorney filing the motion, or both to pay the party or deponent who opposed the motion its reasonable expenses incurred in opposing the motion, including attorney's fees."   Fed. R. Civ. P. 37(a)(5)(B). "But the court must not order this payment if the motion was substantially justified or other circumstances make an award of expenses unjust."   *Id.*   A motion is "substantially justified" if it raises "a genuine dispute, or if reasonable people could differ as to the [appropriateness of the contested action]."   *Josendis v. Wall to Wall Residence Repairs, Inc.,* 662 F.3d 1292, 1314 (11th Cir. 2011) (alteration in original) (quoting *Pierce v. Underwood,* 487 U.S. 552, 565 (1988)). "Thus, as would be expected, the award of sanctions under Rule 37(a)(5) turns on the specifics of each individual case."   *Josendis, 662 F.3d* at 1314.   The Court finds that an award of attorney's fees is not appropriate in this instance because it appears the motive for the Motion was to protect whatever information King possesses that is legitimately protected by the attorney-client privilege.

Based on the forgoing, it is **ORDERED** that the Motion (Doc. No. 1) is **DENIED** and the stay of the enforcement of the subpoena is lifted.

**DONE** and **ORDERED** in Orlando, Florida, on June 14, 2019.

_____
GREGORY J. KELLY
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

Counsel of Record