QUINN EMANUEL URQUHART & SULLIVAN, LLP
Amar L. Thakur (SBN 194025)
(amarthakur@quinnemanuel.com)
5095 Rancho Quinta Bend
San Diego, CA 92130
Telephone: (213) 443-3000
Facsimile: (213) 443-3100

Jane M. Byrne (NY 2266443)
(janebyrne@quinnemanuel.com)
Guyon H. Knight (NY 5003108)
(guyonknight@quinnemanuel.com)
Jonathan E. Feder (NY 5409172)
(jonathanfeder@quinnemanuel.com)
51 Madison Ave., 22nd Fl.
New York, NY 10010
Telephone: (212) 849-7000
Facsimile: (212) 849-7100

Attorneys for Defendant and Counterclaimant
ALLIED WORLD SURPLUS LINES
INSURANCE COMPANY

*Counsel continued on next page*

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| AMERICAN CLAIMS MANAGEMENT, INC., <br><br> Plaintiff and Counterclaim-Defendant, <br><br> v. <br><br> ALLIED WORLD SURPLUS LINES INSURANCE COMPANY (f/k/a Darwin Select Insurance Company), <br><br> Defendant and Counterclaimant. | Case No. 3:18-cv-00925-JLS-MSB <br><br> **REDACTED** <br> **JOINT MOTION FOR DETERMINATION OF DISCOVERY DISPUTE** <br><br> Judge: Hon. Michael S. Berg <br> Courtroom: 3rd Floor (Schwartz) |

| | |
|---|---|
| COOLEY LLP | BROWN & BROWN, INC. |
| William V. O'Connor (216650) | Mark E. King (*pro hac vice*) |
| (woconnor@cooley.com) | Chief Litigation Counsel |
| Alexander R. Miller (294474) | (MEKing@bbins.com) |
| (amiller@cooley.com) | 220 South Ridgewood Avenue |
| 4401 Eastgate Mall | Daytona Beach, FL 32115 |
| San Diego, CA 92121 | Telephone: (386) 239-5782 |
| Telephone: (858) 550-6000 | Facsimile: (386) 239-5729 |
| Facsimile: (858) 550-6420 | |

Gregory Hoffnagle (*pro hac vice*)
55 Hudson Yards
New York, NY 10001
Telephone: (212) 479-6648
Facsimile: (212) 479-6275

Dane R. Voris (281051)
(dvoris@cooley.com)
500 Boylston Street
Boston, MA 02116
Telephone: (617) 937-2300
Facsimile: (617) 937-2400

Attorneys for Plaintiff and Counterclaim-Defendant AMERICAN CLAIMS MANAGEMENT, INC.

In accordance with Federal Rule of Civil Procedure 26, 34, and 37, Southern District of California Civil Local Rule 26.1, and this Court's Civil Chambers Rule IV, Defendant and Counterclaimant Allied World Surplus Lines Insurance Company ("Allied World") and Plaintiff and Counterclaim-Defendant American Claims Management, Inc. ("ACM") submit this Joint Motion for Determination of Discovery Dispute ("Joint Motion").

## I.   ISSUES SUBJECT TO DISPUTE

This Joint Motion raises Allied World's objections to ACM's claims of attorney-client privilege and work product protection as to 17 entries in ACM's 5,055-entry privilege log. Specifically, this Joint Motion objects to ACM's withholding of two categories of documents: (1) documents sent by Robert Schraner (the general counsel of ACM's parent) to Mark King (in-house head of litigation for ACM's ultimate parent, Brown & Brown) that appear to be copies of a mediation brief and a draft assignment agreement, neither of which are privileged as against Allied World, and (2) documents that were not sent to or from an attorney.[1] Allied World now seeks to compel ACM to produce the non-privileged portions of these documents. Relevant entries from ACM's privilege log are attached to this motion as Exhibit A to the Declaration of Guyon H. Knight.

Allied World raised these objections to ACM in a letter dated June 10, 2019, and on a telephonic meet and confer on June 21, 2019. ACM responded in a letter dated June 28, 2019, but did not remedy the issues Allied World raises in this Joint Motion.

**A.   Category 1: Documents Sent To Mark King In April 2014**
**Relevant Entries On ACM's Privilege Log:**

---

[1] At 4:22 p.m. on July 8, 2019, ACM informed Allied World for the first time that it would not oppose Allied World's motion concerning Category 2, and would produce these documents by July 12, 2019. ACM's decision was made after Allied World took the time and resources to prepare this Joint Motion, and after Allied World allocated its five-page memorandum between these two categories. The Federal Rules permit the Court to award expenses if the responding party produces documents only after a motion to compel is filed. *See* Fed. R. Civ. P. 37(a)(5)(A).

ACM withheld an April 30, 2014 email from Schraner to King and two attachments to this email on the basis of attorney-client privilege and the work product doctrine. The relevant portions of ACM's privilege log are reproduced below:

| Entry No. | Record Type | Privilege Type | Custodian | Email To | Email From | Email CC | Email Subject | Email Sent Date Time | Filename |
|---|---|---|---|---|---|---|---|---|---|
| 617 | P | Attorney Client Privilege, Attorney Work Product | Bob Schraner | Mark E. King' [MEKing@bbins.com] | Bob Schraner | Cindy Long' [CLong@bbins.com] | FW: How are things going? | 4/30/2014 19:05 | 000000308.msg |
| 618 | A | Attorney Client Privilege, Attorney Work Product | | | | | | 4/30/2014 19:05 | Cardona v Cortes Mediation Briefs.pdf |
| 619 | A | Attorney Client Privilege, Attorney Work Product | | | | | | 4/30/2014 19:05 | Cortes Assignment Agreement.pdf |

After producing its privilege log, ACM confirmed that Entry 617 was produced in redacted form. (Knight Decl., Ex. H) This Joint Motion challenges only ACM's withholding of Entries 618-619.

**Allied World's Response To Category 1:**

On June 17, 2019, Allied World responded to these privilege log entries in an email to ACM's counsel:

> I write concerning Entries 617-619 in ACM's privilege log. The subject line in Entry 617 indicates that the email is a continuation of a chain that is not privileged as against Allied World. Likewise, the attachments to this email—based on their titles of "Cardona v. Cortes Mediation Briefs.pdf" and "Cortes Assignment Agreement.pdf"—appear to be documents that were shared with Allied World in addition to Mr. King. Even if these documents contain limited portions that are privileged, those portions can be redacted. Please produce these documents.

**Allied World's Statement Regarding Category 1:**

Entries 618 and 619 cannot be withheld in their entirety on the basis of privilege because it appears they were drafted by counsel retained by Allied World to represent ACM, meaning that these documents cannot be privileged as against Allied World. Allied World appointed counsel to represent ACM (a professional third-party claims handler) after ACM's client QBE Insurance Corp. ("QBE") asserted that ACM had exposed QBE to a bad faith claim by mishandling a policy-limits demand made by members of the Cardona family who were injured in a car crash caused by a QBE policyholder, Galdino Cortes. The appointed counsel, Alan Jampol, gave ACM several options for responding to this claim, including attempting to obtain an assignment of Cortes' right to sue for bad faith. Schraner, who acted for ACM in the handling of this claim, authorized obtaining an assignment. Jampol then prepared a draft assignment agreement, which was later presented to Cortes. The documents withheld in Entries 618 and 619 appear to be a draft of Jampol's assignment agreement, along with a mediation brief that Jampol prepared. These documents are not privileged as against Allied World because ACM, Allied World, and Jampol were in a tripartite attorney-client relationship. (Knight Decl., Ex. J at 143:10-144:6.) Indeed, Jampol provided these documents to Allied World's claim handler, Brett Arruda, at the time they were drafted. Even if ACM could establish that some portions of the withheld documents are privileged as against Allied World, those portions should be redacted and the remainder of the document produced.

Entries 618 and 619 are highly relevant to this dispute. ACM has taken the position in this case that Jampol orchestrated the assignment of Cortes' right to sue his insurer for bad faith to benefit Allied World, not ACM. (Dkt. 54 ("Am. Compl."), ¶¶ 29-32.) ACM has also asserted that Jampol was acting under the "direct[ion] and control[] [of] Allied World … as he pursued [this] assignment scheme." (*Id.* ¶ 89.) The documents ACM has withheld are evidence that these claims are false. If King was provided with a draft of the Cortes assignment agreement months before it was

presented to Cortes in August 2014, yet permitted the assignment to go forward, that fact confirms that ACM and its corporate parents did not believe the assignment was harmful to their interests.

In other circumstances, King had no qualms about overruling Jampol to protect the interests of ACM and Brown & Brown. For example, at around the same time as King was apparently provided with a draft of the assignment agreement, Jampol had requested that Schraner provide QBE Insurance Corp. (Cortes' insurer) with a copy of the Allied World policy. Schraner wanted to comply with Jampol's advice, but "███████████████████████████████████████████████████████" (Knight Decl., Ex. J at 148:14-149:2.) Since King was free to reject Jampol's advice in other facets of this dispute, King certainly could have vetoed the assignment.

Finally, the text of the privilege log standing alone is not sufficient for Allied World's needs. When Schraner was questioned about these entries at his deposition, he declined to provide substantive testimony because "█████████████████████████████████████████████" (*Id.* at 211:23-215:21.) Only producing the document itself will establish that King was in fact provided with a draft of the assignment agreement months before it was presented to and signed by Cortes.

**ACM's Response:**

On June 28, 2019, ACM responded to Allied World's request as follows:

> The document listed at entry 617 contains privileged communications between ACM's attorneys, and the non-privileged portion of the email chain has already been produced. The documents listed at entries 618 and 619 are email attachments included for the first time in the email chain by ACM's attorney Robert Schraner.[2]

**ACM's Statement:**

---

[2] Allied World's footnote number 1 is unnecessary and misleading. Allied World served its joint motion on ACM at 7:36 p.m. EST on Friday, June 28, 2019—the same day that ACM provided Allied World with supplemental descriptions of certain ACM privilege log entries pursuant to paragraph 6 of the Privilege Log Order (Doc. No. 43), as requested by Allied World. While Allied World did not meet and confer with ACM on these supplemental descriptions before serving its joint motion, ACM nevertheless agreed to produce redacted versions of the Category 2 documents, and notified Allied World of its intent to do so within 5 business days.

Entries 618 and 619 are properly withheld because they are email attachments to a privileged communication between attorney Robert Schraner to attorney Mark King. There is no dispute that Messrs. Schraner and King acted as attorneys for ACM, and that the parent email containing the attachments, reflected in entry 617, is privileged. Instead, Allied World contends that because the attachments may have been originally drafted by counsel appointed by Allied World to defend ACM, they should not be privileged as to Allied World.

Allied World's argument misses the mark. Entries 618 and 619 are protected by the attorney-client privilege because Mr. King acted as ACM's attorney, and the attachments were sent as part of a privileged communication. They are also protected under the work product doctrine because the attachments were selected by counsel, and reflect counsel's mental impressions and legal strategy. There is no legitimate basis for compelling the production of materials attached to an indisputably privileged communication between ACM's attorneys, especially where ACM has already listed these materials on its privilege log and provided supplemental descriptions of the withheld documents in accordance with paragraph 6 of the ESI Order (Doc. No. 43).

### B.  Category 2: Communications Without Any Attorney

**Relevant Entries On ACM's Privilege Log:**

Allied World objects to the following Entries on ACM's privilege log, which ACM claims are privileged in their entirety despite not being sent to or from an attorney:

- Allied World objects to communications between Dhara Patel, President of ACM, and Nisha Kobell, an employee for ACM, neither of whom are attorneys: Entries 1850-1852, 1908, 2468-2470, 2488, 2489.

- Allied World objects to a communication between Patel and Christine Washburn, an employee at Brown & Brown, neither of whom are attorneys: Entry 1421.

- Allied World objects to a communication between Kobell, and Susan Maltese, an employee of ACM, neither of whom are attorneys: Entry 1854.

- Allied World objects to the following documents that non-attorney Patel sent to herself: Entries 2052-2055.

**Allied World's Response To Category 2:**

On June 10, 2019, Allied World responded to these privilege log entries with the following portion of a letter:

> [N]umerous entries do not have an attorney identified as either sending or receiving an email, but attorney-client privilege is claimed. *See e.g.*, Log Numbers 414, 415, 1850-1852, 1877-1886, 1889, 1908, 1915, 1916, 2121, 2123, 2127-2129, 2130, 2468, 2469-2476, 2488-2491, 2649, 2650, 2652, 2653, 3009-3013, 3352-3352, 3357, 3358 (communication between Dhara Patel and Nisha Kobell); 949, 950, 952, 1358, 1359, 1421 (communication between Dhara Patel and Christine Washburn); 371, 1109, 1117, 1127, 1129, 1657, 1658, 1745-1747, 1966, 1967, 2945, 2946, 2956, 3437, 3438, 3792-3794, 3796, 4228, 4245 (communication between Dhara Patel and Cindy Long); 1116, 1128, 1660, 1661, 1742-1744, 1749, 1755 (communication between Michael Powell and Cindy Long); 1854, 1855, 1896, 1911, 1912, 1914, 1918, 1920-1922, 1939 (communication between Susan Maltese and Nisha Kobell); 636, 637, 884 (communication between Amy Bloome and Dhara Patel); 707, 730, 2001, 2002, 2003, 2973, 2982, 2983, 2988, 2989, 29990, 2997, 2998, 3041, 3042, 3043 (communication between Irina Kranz, Dhara Patel, Scott Marshall, and others). Additionally, Plaintiffs claim many entries are privileged where an attorney is only cc'ed on an email. Plaintiffs cannot transform otherwise non-privileged emails into documents deserving of protection simply by including a lawyer on them. *See e.g.*, Log Numbers 73, 76, 79, 87, 90, 93-95, 99, 119, 120, 123, 124, 127, 128, 166, 571, 572, 620, 698, 700, 706, 721, 722, 723-727, 909, 1429, 1850-1952, 1940, 1941, 1966, 2470, 2471, 3437, 3438. Please explain how these documents can be protected by attorney-client privilege, or produce such documents.
>
> * * *
>
> Plaintiffs claim that numerous privilege log entries are covered by attorney client privilege or the attorney work product doctrine for emails or documents that were not sent to someone else, but are merely an individual sending an email or document to his or herself. *See, e.g.*, Log Numbers 709, 714, 1891, 1892, 2052-2055, 2303, 2303, 2305, 2307, 2315, 2355, 2553, 3848. Defendants are entitled to any portions of these emails or documents that do not contain independent legal advice. Please produce the non-privileged portions of such documents.

**Allied World's Statement Regarding Category 2:**

As a general matter, communications between non-attorneys are not protected by the attorney-client privilege. As a result, the communications in Category 2 cannot be withheld based on this privilege, except to the extent these communications reflect other privileged communications. It strains credulity to believe that these communications between and among non-attorneys can be withheld in their entirety on the basis that they reflect other privileged communications. The non-privileged portions of these documents must be disclosed.

ACM also cannot use the federal work product doctrine to shield these documents. Even assuming ACM establishes that the Entries in Category 2 were "prepared in anticipation of litigation or for trial," the documents still must be produced because Allied World has "substantial need" for them and cannot obtain these communications other then by the production of these documents. Fed. R. Civ. P. 26(b)(3)(A). Any attorney opinion work product contained in these documents can be redacted and the remainder of the document produced. *See* Fed. R. Civ. P. 26(b)(3)(B).

**ACM's Statement Regarding Category 2:**

## ALLIED WORLD'S MEMORANDUM OF POINTS AND AUTHORITIES

### I. INTRODUCTION

ACM has served a 5,055-entry privilege log that asserts privilege over the entirety of numerous documents that cannot be privileged in their entirety. First, ACM withholds documents that were shared with Allied World as part of a tripartite attorney-client relationship—documents that show ACM's corporate parent was informed of the assignment that is central to ACM's case, yet allowed that assignment to go forward. Second, ACM is withholding numerous communications that do not involve an attorney. The nonprivileged portions of all of these documents must be produced.

### II. LEGAL STANDARD

California's "attorney-client privilege protects confidential disclosures made by a client to an attorney in order to obtain legal advice." *Chevron Corp. v. E-Tech Int'l*, 2010 WL 3584520, at *5 (S.D. Cal. Sept. 10, 2010). "Privileges in general are narrowly construed under California law because the privilege withholds relevant information from the fact finder." *Hoot Winc, LLC v. RSM McGladrey Fin. Process Outsourcing, LLC*, 2010 WL 2404664, at *1 (S.D. Cal. June 11, 2010). "To qualify for work-product protection, documents must: (1) be prepared in anticipation of litigation or for trial and (2) be prepared by or for another party or by or for that other party's representative." *Toranto v. Jaffurs*, 2018 WL 3546453, at *2 (S.D. Cal. July 24, 2018). "At its core, the work-product doctrine shelters the mental processes of the attorney…." *United States v. Christensen*, 828 F.3d 763, 805 (9th Cir. 2015) (internal quotation marks omitted). For both the privilege and work product, the party withholding documents bears the burden of proof. *See Folz v. Union Pac. R.*, 2014 WL 2860271, at *4 (S.D. Cal. June 23, 2014); *Garcia v. City of El Centro*, 214 F.R.D. 587, 590 (S.D. Cal. 2003).

### III. CATEGORY 1: ENTRIES 618 AND 619 ARE NOT PRIVILEGED AS AGAINST ALLIED WORLD

ACM has withheld in their entirety two documents that, based on their title, were provided to Allied World by Alan Jampol—the attorney whose firm was appointed by

1  Allied World to represent ACM.  These documents are not privileged as against Allied
2  World and must be produced.
3        For background, in March 2014, in response to QBE's renewed accusation that
4  ACM had acted in bad faith in the handling of the Cardonas' claim, Allied World
5  appointed the law firm of Jampol Zimet to represent ACM.  (Knight Decl., Ex. B.)  Marc
6  Zimet initially handled the representation, but in late March, he handed the matter off
7  to his partner, Alan Jampol.  (Knight Decl., Ex. C; Am. Compl. ¶ 28.)  ACM did not
8  object to Jampol's representation; indeed, Robert Schraner (the general counsel of
9  ACM's immediate corporate parent) testified that ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇
10 ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇"  (Knight Decl., Ex. J at 140:21-141:12.)
11       Jampol prepared a memo outlining several options for ACM's next steps, one of
12 which was to obtain an assignment of Cortes' right to sue QBE for bad faith.  (Knight
13 Decl., Ex. D.)  This option would have the effect of cutting off QBE's liability to Cortes
14 beyond the $30,000 limits of Cortes' automobile policy, and thus ACM's potential
15 liability to QBE for any bad faith damages.  ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇
16 ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇.  (Knight Decl., Ex. J at
17 163:24-165:10.)  Jampol then prepared a draft of an assignment agreement and sent it
18 to Schraner and Allied World's claim handler, Brett Arruda, for their comments.
19 (Knight Decl., Ex. F.)  Schraner reviewed the draft and "▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇."  (Knight
20 Decl., Ex. J at 202:3-203:4.)  Schraner then ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇
21 ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇.  (*Id.* at 170:20-171:15.)
22 Schraner "▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇."  (*Id.* at 175:12-177:7.)
23       A week after Schraner reviewed Jampol's draft assignment agreement, Jampol
24 attended a mediation in the underlying action brought by the Cardonas against Cortes.
25 (Knight Decl., Ex. G.)  Before that mediation, Jampol had prepared a brief outlining the
26 positions of ACM and QBE with respect to whether the Cardonas would be able to
27 obtain bad faith damages from QBE.  (Knight Decl., Ex. F.)  Like the draft assignment
28 agreement, Jampol shared this brief with both Schraner and Arruda and requested their

1 | comments. (*Id.*)

2 | While Jampol attended the mediation on April 29, 2014, he was included in an
3 | email chain where he provided his impressions of the progress at the mediation. (Knight
4 | Decl., Ex. H.) On April 30, Schraner forwarded this chain to Mark King, the head of
5 | litigation at Brown & Brown, ACM's ultimate corporate parent. (*Id.*) Schraner also
6 | sent King two documents titled "Cardona v Cortes Mediation Briefs.pdf" and
7 | "Cortes Assignment Agreement.pdf," which ACM has withheld as Entries 618 and 619.

8 | Allied World's motion to compel Entries 618 and 619 should be granted. *First*,
9 | these documents are highly relevant. ACM has based its claims against Allied World
10 | in large part on the notion that Jampol orchestrated the assignment to benefit Allied
11 | World to the detriment of ACM. (Am. Compl. ¶¶ 29-32, 89.) But if King was provided
12 | with a draft of the assignment agreement and allowed the assignment to go forward,
13 | that would disprove ACM's theory that the assignment was designed to benefit Allied
14 | World more than ACM. After all, King felt free to overrule Jampol's advice in other
15 | matters. When, for example, Jampol requested that Schraner provide QBE with a copy
16 | of the Allied World policy, "███████████████████████████████████
17 | ███." (Knight Decl., Ex. J at 148:14-149:2.) And later, King fired Jampol. (Am.
18 | Compl. ¶ 36; Knight Decl. Ex. I.)

19 | *Second*, these withheld documents prepared by Jampol are not privileged as
20 | against Allied World. ACM, Allied World, and Jampol were in a tripartite relationship.
21 | (Knight Decl., Ex. J 143:10-144:6). "In the insurance context, California courts
22 | recognize that when there is a single, common goal shared by an insurer and its insured
23 | of minimizing or eliminating liability to a third party[,] a unique tripartite relationship
24 | exists among those parties. Within the tripartite relationship, both insurer and the
25 | insured have a common interest … and thus, the attorney-client privilege is shared
26 | among the insurer, insured, and attorney." *Lincoln Gen. Ins. Co. v. Ryan Mercaldo*
27 | *LLP*, 2015 WL 12672142, at *2 (S.D. Cal. July 15, 2015) (internal quotation marks,
28 | alteration, and citation omitted). While a conflict between appointed counsel and

1  policyholder can upset a tripartite relationship, no conflict existed here.  Indeed,
2  Schraner admitted at his deposition that "█████████████████████████████
3  ████████████████████████████████████████████████████████████
4  ████████████████████████████████."  (Knight Decl., Ex. J at 105:18-
5  108:7.)  In short, ACM and Allied World were both within the scope of a tripartite
6  privileged relationship with Jampol, and thus ACM cannot withhold otherwise
7  privileged documents that Jampol prepared.
8      ACM may argue that the documents Schraner sent to King contain independent
9  privileged information.  The  burden is on ACM to prove that portions of these
10 documents are privileged, and even if they are, ACM can easily redact the privileged
11 portions.  *See Conforto v. Mabus*, 2014 WL 3896079, at *8 (S.D. Cal. Aug. 8, 2014)
12 (ordering the production of redacted documents).[3]

13 **IV.  CATEGORY 2: ACM CANNOT WITHHOLD DOCUMENTS WITH NO ATTORNEYS**
14      ACM cannot withhold in their entirety documents and communications that were
15 neither sent to nor received from an attorney.  "The attorney-client privilege protects
16 the confidentiality of communications *between attorney and client* made for the purpose
17 of obtaining legal advice."  *Hoot*, 2010 WL 2404664, at *1 (emphasis added, citations
18 omitted).  All of the documents in Category 2 are communications between or among
19 non-attorneys without even copying an attorney, and thus cannot qualify for the
20 privilege on their face.  Even if certain portions of these documents reflect attorney
21 advice, ACM would bear the burden of proving that fact.  It strains credulity to believe
22 that these documents sent by non-attorneys to other non-attorneys are entirely covered

---

[3] ACM may rely on the California work product doctrine, but "[f]ederal law, not state law, provides the governing law on the scope and extent of the attorney work-product doctrine."  *F.D.I.C. v. Fid. & Deposit Co. of Maryland*, 196 F.R.D. 375, 381 (S.D. Cal. 2000).  In any event, California's work product doctrine does not prevent ACM from producing redacted documents that protect any such work product that was not shared with Allied World.  *See, e.g.*, *Ritchie v. Sempra Energy*, 2015 WL 12912030, at *16 (S.D. Cal. June 11, 2015).

by the privilege or work product doctrine. ACM should therefore produce the non-privileged portions of these documents.

If ACM claims that these documents are covered in their entirety by the federal work product doctrine, that doctrine must give way here. Ordinary fact work product created by a non-attorney must be produced if it is otherwise discoverable, the requesting party has shown a substantial need for the documents, and the requesting party cannot obtain equivalent information by other means. *See Odyssey Wireless, Inc. v. Samsung Elecs. Co.*, 2016 WL 7665898, at *6-7 (S.D. Cal. Sept. 20, 2016). The information withheld by ACM is *only* available in these documents and cannot be obtained from third parties or at deposition. *See id.* Allied World also has a substantial need for these materials. For example, many of the withheld documents were sent to or from Dhara Patel, ACM's President. Patel testified at her deposition (and will surely do so again at trial) that ███████████████████████████████████████████████████████████████████████████████████████████████████████████████████." (Knight Decl., Ex. K at 164:20-165:5.) Patel's withheld emails may show that she (and others at ACM) did in fact exercise their own judgment notwithstanding Jampol's advice. *See Witman v. Knight Transp., Inc.*, 2016 WL 9503738, at *2 (S.D. Cal. Apr. 29, 2016) (finding substantial need where withheld materials would be used for impeachment purposes).[4] These documents should therefore be produced, at least in redacted form.

## V. CONCLUSION

ACM should therefore produce the non-privileged portions of these documents.

---

[4] If this Court finds that Allied World has not shown substantial need, it should order ACM to supplement its privilege log to provide additional information about the withheld documents so that Allied World can better evaluate ACM's privilege claims.

**ACM'S MEMORANDUM OF POINTS AND AUTHORITIES**

While ACM disputes the relevance and accuracy of the factual background provided by Allied World above, it is unnecessary for ACM to provide its own counter-statement because this joint motion raises only a single legal question: Does the attorney-client privilege or work product doctrine protect attachments to a privileged email, even assuming those documents would not be independently privileged? Under California law, the answer is clearly "yes," so Allied World's motion to compel must be denied.

## I. LEGAL STANDARD

"[I]n a civil case, state law governs privilege regarding a claim or defense for which state law supplies the rule of decision." Fed. R. Evid. 501. In California, "information transmitted between a client and his or her lawyer" in confidence during the course of the attorney-client relationship is privileged. Cal. Evid. Code §§ 952, 954. This attorney-client privilege extends to "the ***entire communication***, including its recitation or summary of factual material" that "may be discoverable by some other means." *Costco Wholesale Corp. v. Superior Court*, 47 Cal. 4th 725, 736 (2009) (emphasis added).

Under the work-product doctrine, "[a] writing that reflects an attorney's impressions, conclusions, opinions, or legal research or theories is not discoverable under any circumstances," while any other attorney work-product is only discoverable if "denial of discovery will unfairly prejudice the party seeking discovery in preparing that party's claim or defense or will result in an injustice." Cal. Civ. Proc. Code § 2018.030; *see Ritchie v. Sempra Energy*, No. 10CV1513-CAB(KSC), 2015 WL 12912030, at *16 n.6 (S.D. Cal. June 11, 2015) (analyzing work-product doctrine under California law).

## II. ENTRIES 618 AND 619 ARE ATTORNEY-CLIENT PRIVILEGED

As an initial matter, Allied World fails to make the requisite showing that entries 618 and 619 are not independently privileged documents. "Once [a] party establishes

facts necessary to support a prima facie claim of privilege, the communication is presumed to have been made in confidence and the opponent of the claim of privilege has the burden of proof to establish the communication was not confidential or that the privilege does not for other reasons apply." *Costco Wholesale Corp.*, 47 Cal. 4th at 733 (citing Cal. Evid. Code § 917(a)). ACM produced the email listed at entry 617 with redactions to protect privileged communications between ACM's counsel. Allied World does not dispute that the redacted portions of entry 617 are attorney-client privileged, and that entries 618 and 619 were attached by Mr. Schraner as part of his privileged communication to Mr. King and Mr. King's paralegal Cindy Long. Instead, Allied World contends that these documents were likely drafted by counsel appointed by Allied World, and thus, are not independently privileged.

Allied World's argument misses the far more important point. Even if Allied World could meet its burden to establish that entries 618 and 619 are not independently privileged, the California Supreme Court has unequivocally held that the attorney-client privilege attaches to an "***entire communication***," "irrespective of whether it includes unprivileged material." *Costco Wholesale Corp.*, 47 Cal. 4th at 734–35 (emphasis added); *see Ritchie*, 2015 WL 12912030, at *6 ("California law does not support petitioner's contention that defendant cannot withhold documents attached to a privilege communication that do not independently qualify for protection under the attorney-client privilege."). In fact, as the California Supreme Court explained, the attorney-client privilege covers even the "transmission of documents which are available to the public." *Costco Wholesale Corp.*, 47 Cal. 4th at 734 (internal quotes and citation removed). "[I]t is the actual fact of transmission which merits protection, since discovery of the specific public documents might very well reveal the transmitter's intended strategy." *Id.* (internal quotes and citation omitted). The same rationale applies here.

Moreover, the proper procedure in considering privilege is to assess "the dominant purpose of the relationship" between the parties to the communication i.e.,

"whether an attorney-client relationship existed at the time [the] confidential communication was made." *See Ritchie*, 2015 WL 12912030, at *7, 13. Allied World does not—and cannot—contest that an attorney-client relationship exists between ACM and its counsel. Entries 618 and 619 are properly withheld as attorney-client privileged because they are part and parcel of the privileged communication in entry 617.

### III.   ENTRIES 618 AND 619 ARE PROTECTED ATTORNEY WORK-PRODUCT

In addition to being attorney-client privileged, entries 618 and 619 are also protected under the work-product doctrine because they were selected by ACM's counsel for attachment to the privileged communication in entry 617, and therefore reflect ACM's counsel's "impressions, conclusions, opinions, or legal research or theories." Cal. Civ. Proc. Code § 2018.030(a). Under California law, such work-product "is not discoverable under any circumstances." *Id.*; *see Ritchie*, 2015 WL 12912030, at *16 n.6 (analyzing work-product doctrine under California law). Indeed, the very reason Allied World seeks to compel disclosure of entries 618 and 619 is to supposedly establish that ACM's attorney Mark King "did not believe the assignment was harmful to [Brown & Brown's] interests." This is improper. *See, e.g.*, *Sav-On Drugs, Inc. v. Superior Court*, 15 Cal. 3d 1, 5 (1975) ("A party's contention may be the subject of discovery, but not the legal reasoning or theory behind the contention.").

In any event, even documents that do not reflect counsel's "impressions, conclusions, opinions, or legal research or theories" are only discoverable if "denial of discovery will unfairly prejudice the party seeking discovery in preparing that party's claim or defense or will result in an injustice." Cal. Civ. Proc. Code § 2018.030(b). Allied World will not be unfairly prejudiced in preparing its defense nor suffer any injustice based on ACM's withholding of attachments to a privileged email between ACM's counsel. To the contrary, what Mr. King thought about any materials sent to him by Mr. Schraner, assuming he ever even received or reviewed them, is clearly privileged, and exactly the type of information the work-product doctrine is intended to protect. *See Ritchie*, 2015 WL 12912030, at *16 ("The purpose of the work product

privilege is to . . . 'Preserve the rights of attorneys to prepare cases for trial with that degree of privacy necessary to encourage them to prepare their cases thoroughly and to investigate not only the favorable but the unfavorable aspects of those cases.'") (quoting Cal. Code Civ. Proc. § 2018.020).

## IV.   CONCLUSION

Allied World's attempt to compel disclosure of attachments to an email which it concedes was properly redacted for privilege should be rejected. California law is clear that the attorney-client privilege attaches to an "entire communication," "irrespective of whether it includes unprivileged material." *Costco Wholesale Corp.*, 47 Cal. 4th at 734, 736.  Further, California's work-product doctrine broadly protects against disclosure of any writing reflecting counsel's "impressions, conclusions, opinions, or legal research or theories" under any circumstances.  Cal. Civ. Proc. Code § 2018.030(a).  Accordingly, Allied World's motion must be denied.

Dated:  July 9, 2019                COOLEY LLP

                                    By: *s/William V. O'Connor*
                                         William V. O'Connor (216650)

                                    Attorneys for Plaintiff and Counterclaim-Defendant AMERICAN CLAIMS MANAGEMENT, INC.

Dated:  July 9, 2019                QUINN EMANUEL URQUHART & SULLIVAN, LLP

                                    By: *s/Amar L. Thakur*
                                         Amar L. Thakur (194025)

                                    Attorneys for Defendant and Counterclaimant ALLIED WORLD SURPLUS LINES INSURANCE COMPANY